IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **THE HANOVER INS. CO.** a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> **NORTHERN BUILDING. CO.,** a Michigan corporation, and **THOMAS VANDUINEN,** a Michigan citizen <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 11 C 2020 <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Hanover Insurance Company ("Hanover") brought this action against Northern Building Company and Thomas VanDuinen (collectively "Northern Building"), arguing that defendants beached an indemnity agreement relating to a construction project. Hanover moved for summary judgment on its breach of contract claim, contending that there is no dispute of material fact concerning Northern Building's breach. Northern Building filed a counter motion seeking summary judgment in its favor, dismissal of the action, or change of venue.[1] For the reasons set forth below, I

---

[1] Northern Building's counter motion is styled as "DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/OR IN THE ALTERNATIVE, DEFENDANTS' MOTION FOR DISMISSAL FOR A LACK OF DIVERSITY JURISDICTION (THE AMOUNT IN CONTROVERSY DID NOT EXCEED $75,000 WHEN THE CASE WAS FILED)/OR IN THE ALTERNATIVE FOR CHANGE OF VENUE." (Dkt. No. 42.)

grant Hanover's Motion for Summary Judgment, and deny Northern Building's motion in its entirety.

I.

The following facts, derived from the parties' Local Rule 56.1 statements and exhibits, are undisputed unless otherwise indicated.

In the Spring of 2008, the Federal Aviation Administration ("FAA") began safety upgrades to the air traffic control tower at Chicago's Midway Airport. The general contractor, subcontractors, and insurance companies who provided construction bonds for that project have since become embroiled in various disputes, which have resulted in an array of litigation before the District Court.[2] The instant case involves the following entities: (1) the general contractor on the project: Parsons Infrastructure & Technology Group, Inc. ("Parsons"); (2) a subcontractor: the defendant in this case, Northern Building; (3) the subcontractor's bonding company: Hanover; (4) the subcontractor's sub-subcontractor: McDaniel Fire Systems("McDaniel"); and (5) a final subcontactor hired by McDaniel, Rex Electric and Technologies LLC ("Rex Electric"), that also claimed it was due payment.

The dispute began between subcontractor Northern Building and its sub-subcontractor, McDaniel. Northern Building and McDaniel had a contract specifying that McDaniel was to complete certain

---

[2] See, e.g., *McDaniel Fire Sys., Inc. v. Northern Bldg. Co.*, No. 09 cv 3320 (Hon. Suzanne B. Conlon, presiding) and *USA for use of McDaniel Fire Sys. et al. v. Hanover Ins. Co.*, No. 10 cv 01595 (Hon. Charles P. Kocoras, presiding).

upgrades to Midway's fire alarm system by March 9, 2009; and, in exchange, Northern Building was to pay McDaniel $134,584.00. (Pl. Rule 56.1(b)(3) Statement (hereinafter "Pl. St.") ¶ 8.)

On May 10, 2009, the FAA inspected McDaniel's work, which was to have been finished, and found that it was deficient in a number of respects. (Defs. Rule 56.1(a)(3) Statement (hereinafter "Defs. St.") ¶ 10.) Northern Building directed McDaniel to address the deficiencies, but McDaniel refused. (Def. St. ¶ 12.) In turn, Northern Building completed the project itself and withheld payment from McDaniel. (Def. St. ¶ 13.) When Parsons (the general contractor) learned that Northern Building was withholding payments from McDaniel, it suspended payments to Northern Building. (Def. St. Ex. 12.)

McDaniel then sued Northern Building, arguing that Northern Building's failure to pay was a breach of contract because, although the FAA inspection noted certain deficiencies, McDaniel had substantially performed under the parties' agreement. (*McDaniel Fire Sys., Inc. v. Northern Bldg. Co.*, No. 09 cv 3320, Dkt. No. 1.) By this point, McDaniel had been paid $20,688.84 by Northern Building, and its lawsuit sought an additional $127,452.78. *Id*. In the midst of that suit, McDaniel filed for bankruptcy and the bankruptcy trustee thereafter pursued the case against Northern Building. (Pl. St. ¶ 23.) On March 10, 2010, the bankruptcy trustee brought another suit against Hanover, because

3

Hanover had bonded Northern Building's work on the Midway project. (Pl. St. ¶ 22.) Generally, when a construction company is "bonded," the bond provider (usually an insurance company) promises to pay either: (1) the construction company's client if the construction company fails to complete the job, and/or (2) the company's subcontractors if the construction company fails to pay the subcontractor's bills.

In consideration of Hanover's issuance of bonds for the Midway project, it required Northern Building to sign an indemnity agreement. (Pl. St. ¶ 11.) The indemnity agreement gave Hanover the exclusive right to settle any claims or lawsuits arising out of the bond and required Northern Building to indemnify Hanover for those settlements, meaning Northern Building would have to reimburse Hanover for costs associated with settling the bond claims. (Dkt. No. 41-1 at 11-13.)

On September 22, 2010, Hanover settled the McDaniel lawsuit for $127,452.78. (Pl. St. ¶ 24.) Hanover demanded that Northern Building indemnify it for the costs associated with litigating and settling the McDaniel suit, and Northern Building refused. (Pl. St. ¶¶ 29-33.) Northern Building strenuously objected to that settlement on the grounds that McDaniel did not deserve to get paid for the incomplete work it did on the Midway project. (Def. St. ¶ 24.) Hanover filed this lawsuit against Northern Building on March 23, 2011, seeking indemnification. (Dkt. No. 1.) Later, in July

4

2011, Hanover received reimbursement for the McDaniel settlement from Parsons in the amount of $127,086. (Pl. St. ¶ 25.) Accounting for that reimbursement, Hanover claims that it incurred an additional $53,504.44 in damages as a result of claim payments, legal fees, and expenses in defending the suit against McDaniel; and it now seeks that amount from Northern Building.

II.

**A. Diversity Jurisdiction**

First, Northern Building argues that the case should be dismissed because Hanover cannot establish that the amount-in-controversy exceeds $75,000, which is required before the Court can exercise diversity jurisdiction under 28 U.S.C § 1332(a). In determining whether a plaintiff has satisfied Section 1332's amount-in-controversy requirement, federal courts generally look to the sum alleged in the complaint, and that sum will control unless it appears to have been made in bad faith or it appears "to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." *Smith v. Am. Gen. Life and Accident Ins. Co, Inc.*, 337 F.3d 888, 892 (7th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Aside from the longstanding "legal certainty" test, it is also well established that the requirements for diversity jurisdiction must be satisfied only at the time a suit is filed. Once jurisdiction vests, subsequent events that reduce the amount-in-controversy to below

5

$75,000 will not ordinarily divest the Court of jurisdiction. *See Grinnell Mut. Reinsurance Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997).

In this case, it is undisputed that Hanover currently seeks less than $75,000 from Northern Building. As noted above, Hanover settled with McDaniel in the underlying lawsuit for $127,452.78. In July 2011, after this suit was filed, Hanover received reimbursement from the government, through Parsons, in the amount of $127,086, leaving it with $53,504.44 in costs associated with defending that suit and prosecuting this one to recover from Northern Building. (Dkt. No. 44 at 8.) However, in analyzing jurisdiction, the amount Hanover *now* seeks from Northern Building is immaterial; the Court must instead look to the amount alleged at the time of the filing of the Complaint.

At the time Hanover filed its complaint in this case, it had not yet received the reimbursement from Parsons, and therefore it alleged the full $154,195.27 in damages. Under the legal certainly test, that sum—which is clearly above the $75,000 amount-in-controversy requirement—controls unless: (1) Hanover alleged it in bad faith or (2) it appears to a legal certainty that the claim is really for less than that amount. In moving to dismiss, Northern Building argues that, at the time of filing, Hanover *expected* to receive a reimbursement from Parsons and knew, therefore, that it

6

would not need to collect full sum from Northern Building. (Dkt. No. 44 at 8.)

Northern Building contends that the settlement of the underlying litigation hinged on payment from Parsons. Taken together, Northern Building's Motion for Summary Judgment, Memorandum in Support thereof, and Rule 56.1 Statement include only one record citation in support of that assertion. That citation is to a 30-page "Transcript of Settlement Proceedings Before Magistrate Judge Cole" (Dkt. No. 44 at 6.)[3] I have reviewed that transcript and it does not appear to contain any reference to the Parsons reimbursement.[4] In its Local Rule 56.1(b)(3)(B) response to Hanover's statement of facts, Northern Building also cites an August 9, 2010, letter from Parsons to Hanover. (Dkt. No. 53 Ex. 12.) That letter contains the following passage:

---

[3] In its Local Rule 56.1(b)(3)(B) response to Hanover's statement of facts, Northern Building cites certain pages of the transcript in support of its claim that Hanover would not have settled the underlying litigation if Parsons did not make the $127,452.78 payment to Hanover. These pages, however, all discuss the fact that Hanover only intended to proceed with the settlement if the bankruptcy court concluded that it reflected the extent of Hanover's liability, and if Rex Electric and McDaniel discharged Hanover of its liability.

[4] I note that Hanover objects to the use of the settlement transcript, citing Fed. R. Evid. 408, which prohibits the use of settlement negotiations to prove the validity or amount of a disputed claim. Settlement discussions can be used for other purposes, however, including to determine if the amount-in-controversy requirement has been met. *See* Tellis v. Sipes, No. 12-cv-00007-SEB-WGH, 2012 WL 1969054, at *3–*5 (S.D. Ind. May 31, 2012).

> Currently $133,486.19 is available for payments, less costs associated with the fire alarm inspections and warranty services. Total cost to date for inspection services paid by Parsons is $3,400.00. Two additional inspections will be required, one in October 2010 and the other in April 2011, at an estimated cost of $3,000. No additional performance is anticipated to meet subcontract closeout requirements. Parsons is not holding any funds for payment. Upon receipt of an invoice and your written instructions, the government will be billed and payment provided to Hanover within 30 days.

This appears to be an assurance from Parsons to Hanover that the government would reimburse Hanover for most of the amount Hanover was to pay in settlement of the McDaniel claim.[5] However, regardless of whether Hanover expected repayment, it is undisputed when this action was filed, Hanover had not received it, and had paid $127,452.78 to the bankruptcy trustee to settle McDaniel's claim. *See Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273–74 (7th Cir. 2001) (holding that "the amount *in controversy* is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins.")

Northern Building has not cited any case law standing for the proposition that a claim for damages must take into account any potential future reimbursements from a third party, and I have not found any. Thus, I cannot conclude with legal certainty that the amount in controversy was below $75,000 at the time this case was filed or that Hanover acted in bad faith. Accordingly,

---

[5] In fact, the amount left after the inspections was $127,086.19, and the government, through Parsons, later paid Hanover $127,086.

8

Northern Building's Motion to Dismiss based on lack of jurisdiction is denied.

### B. Change of Venue

Northern Building also makes a cursory one-paragraph motion for "change of venue," arguing that the Northern District of Illinois is an improper venue and that the case should be transferred to some venue in the state of Michigan.

In a case such as this, where federal jurisdiction is predicated on diversity of the parties, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). A court's decision about whether to transfer a case to a different venue is discretionary. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *see also* 28 U.S.C. § 1404(a). When a party moves for transfer, that party bears the burden of establishing that the transferee venue is more convenient. *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002). Courts may transfer a case under Section 1404(a) when: (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice. *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). In evaluating the convenience of

the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Allied Van Lines*, 200 F. Supp. 2d at 946. In considering the interests of justice, courts weigh additional factors, including: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue. *Id.*

First, the Northern District of Illinois is a proper venue because the construction project underlying the dispute took place at Chicago's Midway Airport. To the extent Northern Building meant to argue that venue is proper here, but would *also* be proper and more convenient somewhere in Michigan, I reject that argument as well because Northern Building has completely failed to present an argument regarding convenience. Northern Building says nothing about the access to sources of proof; the convenience of the witnesses; and the convenience to the parties of litigating in the respective forums. Accordingly, Northern Building's Motion for Change of Venue is denied.

### C. Cross Motions for Summary Judgment

I note that while Northern Building moved for summary

judgment, Hanover is correct that its motion in that regard reads more like a response to Hanover's motion than a motion in its own right. Hanover also moves to strike Northern Building's Local Rule 56.1 Statement of Facts, arguing it is deficient in several ways. Although Northern Building's briefing of its summary judgment motion is problematic in certain respects, motions to strike are disfavored, and I am capable of determining which facts are relevant to the present motions and disregarding extraneous or improper factual statements. See *Zaitzeff v. Peregrine Fin. Grp., Inc.*, 08 C 4053, 2010 WL 438158, at *4 (N.D. Ill. Feb. 1, 2010). As such, Hanover's motion to strike is denied. Regardless, the undisputed facts show that Hanover is entitled to summary judgment, so its motion is granted.

On summary judgment, the moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). To support their positions that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that the materials in the record do or do not establish a genuine dispute. Fed. R. Civ. P. 56(c).

Hanover alleges that Northern Building breached the indemnity agreement by failing to reimburse Hanover for costs expended in litigating and ultimately settling the McDaniel lawsuit. Hanover contends that summary judgment is appropriate because Northern Building has failed to raise any issue of material fact concerning its obligation to reimburse Hanover. I agree.

In Illinois, indemnity agreements are construed—like any other contract—to give effect to the intention of the parties. *See Hanover Ins. Co. v. Smith,* 182 Ill. App. 3d 793, 796 (Ill. App. 1st Dist. 1989). In order to discern the intent of the parties, a court will look to the language in the contract. *United States Fidelity Guarantee Co., v. Klein Corp.*, 190 Ill. App. 3d 250, 254 (Ill. App. 1st Dist. 1990). The language is to be given its plain and ordinary meaning unless it is ambiguous. *Id.*

It is undisputed that Northern Building entered into the indemnity agreement with Hanover. In doing so, it agreed to indemnify Hanover for all losses arising by reason of, or in consequences of, its execution of the bonds, including sums paid in settlement of claims or demands. The indemnity agreement states:

> The Surety [Hanover] shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors [Northern Building], take

> whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors.

(Dkt. No. 41-1 at 11-13.)

Hanover has presented prima facie evidence that it suffered damages in settling the McDaniel bond claims and lawsuit. The indemnity agreement is clear and unambiguous. According to its plain terms, Northern Building is responsible for reimbursing Hanover for the costs associated with that settlement.

In response, Northern Building makes two arguments. First, it argues that there is a factual dispute concerning whether the provisions of the bond were sufficiently triggered such that Hanover was permitted to settle the claim. (Dkt. No. 44 at 4-5.) The bond in this case is a one-page document, separate from the indemnity agreement, in which Hanover agrees to be jointly and severally liable to Parsons for any failure in payment or performance on the part of Northern Building. (Dkt. No. 53-13.) The bond states: "If Principal [Northern Building] shall promptly make payment to all claimants as hereinafter defined for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void." *Id.* Thus, as far as I can tell, Northern Building seeks an opportunity to prove at trial that Hanover's obligation under the Bond was void because Northern Building paid McDaniel in full. The problem with that argument is that Northern Building has, again, failed to

13

present evidence supporting its contention that it paid McDaniel in full, and it is clear from the record that Northern Building stopped making payments to McDaniel after McDaniel failed the FAA inspection. Northern Building's own Rule 56 statement indicates that it halted payments to McDaniel. (Def. St. ¶ 10 "Northern refused payment to McDaniel on its last three pay applications for the reason that the work for which McDaniel was seeking payment had not been completed to the satisfaction of either Parsons or the FAA.").

Second, Northern Building argues that, because Judge Conlon denied McDaniel's summary judgment motion in the *McDaniel v. Northern Building* lawsuit, I must deny Hanover's motion here. (Dkt. No. 44 at 4.) That argument is without merit. In *McDaniel v. Northern Building*, McDaniel alleged that Northern Building failed to pay for work McDaniel performed on the Midway project. (*McDaniel Fire Systems, Inc. v. Northern Building Co.*, Case No 09 cv 3320, Dkt. No. 1.) The parties in that case filed cross motions for summary judgment, and Judge Conlon denied both motions. (Dkt. No. 53-1) Judge Conlon found that there was a material issue of fact concerning whether McDaniel substantially performed under the McDaniel/Northern Building contract. *Id.* If it did substantially perform, McDaniel would be entitled to recover under its breach of contract claim; and, if it did not substantially perform, Northern Building would be justified in its non-payment.

14

That suit had nothing to do with whether an indemnity agreement was breached. In this case, the central issue is whether Northern Building breached an indemnity agreement when it failed to reimburse Hanover for costs associated with the McDaniel claim and lawsuit. When Northern Building stopped paying McDaniel, Hanover was exposed to a costly lawsuit, which it defended and ultimately settled. Under the indemnity agreement between Hanover and Northern Building, barring any bad faith, Hanover had the exclusive right to settle and resolve bond claims as it saw fit. The fact that McDaniel may or may not have substantially performed is irrelevant.

Northern Building argues Hanover acted in bad faith by settling the claims, when in prior proceedings it had asserted that Rex Electric was not a proper claimant under the bond and was simply an unsecured creditor of McDaniel. Hanover asserts that although payment to McDaniel satisfied Rex Electric's claim, it settled with McDaniel, so the issue of the validity of Rex Electric's claim is irrelevant. Regardless, even if Hanover had changed its position as to the validity of Rex Electric's claim, this would not enough to support a finding of bad faith, and Northern Building fails to bring forth any evidence to support a finding of bad faith. By contrast, Hanover has presented evidence that prior to it settling McDaniels' bond claim, it investigated the merits of the claim and potential risks, and examined documents

15

supporting McDaniel's position and those supporting Northern Building's position. Hanover also considered the undisputed fact that Northern Building failed to post collateral, as required by the indemnity agreement. (*See* Dkt No. 41, Ex. B.) Hanover and Northern Building clearly disagreed as to whether the claim should have been paid, but that does not amount to bad faith.

IV.

For the reasons stated herein, Hanover's Motion for Summary Judgment (Dkt. No. 39) is granted. Northern Building's Motion for Summary Judgment, and its associated motions to dismiss (Dkt. No. 42) are denied. Hanover's Motion to Strike Northern Building's Local Rule 56.1 Statement of Facts (Dkt. No. 45) is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: Sept. 4, 2012